Next case on our dock is People v. Raymond Harris. This is the last case, just for the record. We're going to take it under advisement and a disposition will be issued in due course. The next case for Orlando is People v. Raymond Harris, 511-0151. Mr. O'Neill, welcome back. Thank you. May it please the Court. Counselor, my name is Lawrence O'Neill and I represent Mr. Harris in this case. Mr. Harris was found guilty of murder under an accountability theory following a bench trial. This is a direct appeal from the judgment of the circuit court. I ask this Court to reverse Mr. Harris' conviction and remand the case for a new trial. Because Mr. Harris was denied a fair trial and we did not receive proper notice of the nature of the charge and accusations to adequately prepare and present a defense. This issue should be reviewed under the plain error doctrine as both the closely balanced and serious error prongs of the doctrine are met. I'm curious as to what you would contend he could have put forth evidence-wise. Your Honor, the composition of the record is affected by the fact that the defense proceeded throughout the trial believing that the state's theory of prosecution was that Mr. Harris was the shooter. Therefore, during the course of the entire trial, the defense made strategic decisions to address the theory that Mr. Harris was the shooter and adopted a trial strategy to defend against that theory. I don't think you've answered my question, though. I'm curious as to what you think he could have put forth that he would have benefited by if he had... Well, he didn't really need to be charged with accountability, did he? That's correct. So you're just saying that the theory of accountability was a surprise. And if he was aware of that, he would have proceeded in a different way to rebut that. I'm just curious, given the facts, which we all know at this point... Well, Your Honor, again, the record is affected by the fact that Mr. Harris did not defend against the accountability theory. But the broader point is the Sixth Amendment right to notice of the charge. But he did not need to be charged differently, according to CIHA, correct? Well, that is correct. Sorry if I'm pronouncing it correctly. But a difference, a distinction here is that this is a bench trial, which is a unique situation. So you think that the court needs to be more apprised of the theory of the case than a jury? I think that with the CIHA case, that involved a jury trial where the... I would think that the court would be more, you know, we presume that the court knows the law. Yes, Your Honor, but it goes back to the defendant's Sixth Amendment right to notice of the charge and the accusations against him. And in a jury trial, they're oftentimes in voir dire. There was mention of the accountability theory, or CIHA in the other cases. The theory is mentioned in opening statement. I don't see how CIHA supports your position at all. I've read it a number of times. Well, the state cited CIHA. Well, I'm aware of that, but it's a Supreme Court case, and I... Well, this case is distinguishable because it's a bench trial. Now, that is a significant... And in CIHA, the defense can't notice. I'm not sure if this is the case either in voir dire or opening statement. But the point is not the charge. The charge is not the problem. Clearly, the state can charge the defendant as a principal. But the problem is there was no notice at all in this bench trial context that Mr. Harris was subject to being found guilty as an accomplice. Now, you know, in a jury trial, there would be an argument at the instructions conference as to whether the evidence was sufficient to merit an accountability instruction. And certainly, then, the defense counsel would be aware for his closing argument if the judge allowed the accountability instruction to incorporate that into his closing argument. Here, we did not have that. So there was a notice. The problem is notice, and that goes to the heart of our adversarial system. But if the... I understand, for example, this is the case where they charged him with felony murder, but it was under burglary, and he was never charged with burglary. I can understand that, but accountability is part of... It's not a separate charge. It's not a separate charge, but, Your Honor, defending as an accomplice and defending as a principal involve two conceptually different theories. Now, you asked... Again, during the course of the trial, the defense analyzed the state's case to determine whether the evidence proved beyond reasonable doubt that Mr. Harris was the shooter, as the state had announced in an opening statement. And then adopted a trial strategy to defend against that theory. But I don't see any difference between the Seha case and this case other than what you're saying is a jury versus a bench trial. Then I would presume that a court would be... I would think there'd be... Your argument only makes sense if it were the other way around. A jury. A jury. Well, in a jury trial, the defense counsel would have had an opportunity, because of the issues of the instruction conference, to then defend and to incorporate the accountability theory in closing argument. Well, not necessarily. I mean... Well, he would know that the state is proceeding on an accountability theory, and the jury could find him guilty as an accountability theory. Well, one of the cases cited, they didn't submit on accountability, and it was because of a juror note that came back out. Well, that's true. The jurors themselves came up with accountability. Well, that's true. That's a different situation. That was... The accountability instruction was given during deliberation. After the... No, what I'm saying is... It was during deliberation. Right. And I'm saying that the jury came up with the accountability issue themselves. Well, that's correct. And the Milsad court found that that was a problem. Right. And again, because... Because, yes, and again, that was a jury trial. But the problem, the point goes to defendant having noticed during the trial. Now, there's a... Your Honor, you mentioned, you know, the conference. What evidence would Mr. Harris have presented? Now, I can't... Again, I answered what you're trying to answer by saying that the record is different, because Harris believed that he was defending... And I understand what you're trying to present. But I still have... Knowing that he's admitted to the police that he was there, that they all had guns, and that they went there to cause trouble, basically, and... But that does not prove that he aided a veteran in the commission of the crime or that he had an intent to aid a veteran. Well, I think they kind of all said they were going to go there and do whatever they needed to do to get the gun back that he supposedly had. That is not an intent. That does not prove an intent to kill or an intent to aid a veteran in the commission of the crime. Actually, the evidence under... The judge found that the evidence was insufficient to prove that Harris was the principal, was the shooter. The evidence that he was an accomplice is not any stronger to be, you know... Seriously, it's not. It's very slim. There is no evidence that Harris aided and abetted... Well, he doesn't... Well, he has to be in agreement, basically. Correct. There's no... To the murder. Not to get the gun back. When you talk about the evidence is slim, you'd hurt yourself on the plane air, doctor, don't you? Because you have to have closely balanced evidence. Oh, well, the evidence is closely balanced. It's a finding of guilt. It's a closely balanced finding of guilt. But I want to... I'd like to address the point. Again, this problem is notice. It's a Sixth Amendment right to notice. It's not a charging problem. It's a Sixth Amendment right to notice. So... If it is part of what murder is comprised of, you've got the notice. That if the evidence develops, that he can be instructed on accountability. And isn't that kind of what happened, you know, is that the forensic guy says, well, I don't know, you know, nobody could tell whose gun it was, but for whatever reason, he had a Ruger there, and he said, well, it wasn't that Ruger. I wasn't even clear from looking at the record whose Ruger it was. Maybe one of you can clarify it for me. Well, Your Honor, again, the point is that the defense proceeded through the trial. You can go ahead and finish because we've been asking you questions. Well, I would just say that, you know, in considering the evidence that Harris would have presented, that's impossible to say that, however, we do know that he didn't testify. We knew that he didn't put out any evidence. And clearly, if Mr. Harris knew that he was being prosecuted, a theory of being a principal, he could have cross-examined the statement. Well, let me say one other thing, though. When he was questioned, he said that there were only three people there, and he said neither of the other two shot him. But he didn't say that he did? I know he didn't say it, but he didn't deny that he shot him. He said, I'm not going to say on the record or I'm not going to say that I'm the one that shot him. He didn't deny shooting, but he clearly denied that the other two shot him. Well, I would argue, Your Honor, that that still in itself does not prove to have a reasonable doubt that Harris was the shooter. No, it doesn't prove that he was the shooter, and that's what the judge found. Well, it doesn't prove that he was an incompetent shooter. I've got two questions. When was the first time accountability was mentioned in this trial? The first time it was mentioned in a very passing reference. Very passing. Prosecutors closing argument. And was there any motion or any request by defense when this was injected into the trial to either open up the proofs or anything? What was the reaction of the defense? Your Honor, to be honest with you, I think the defense counsel didn't even catch it. There was no objection at all? There was no objection. Okay. I don't think he caught it because it was the prosecutor's reference to it was offhand and very passing. And I say that is because the defense counsel did not argue accountability in this closing argument. And the record's pretty clear that the trial judge pro se, on his own, did not basically offer that to counsel. Is that correct? That's correct. Offer the opportunity. Any opening of proofs, any further argument on the theory of accountability or anything like that. That did not happen by the trial court. That's correct, Your Honor. Okay. Thank you. Mr. O'Neill, I'm sorry I stood during your argument. It's okay. Still have a back problem. Can you answer me? You know, I've been through this before, as you know. And so maybe I know less than I thought I did. But, you know, we couldn't figure out from the record the whole expert forensic situation with whose gun was that supposed to be? Was there any indication that it was one of the shooter's guns? No, I think it was just there for an exhibit. Yeah, because the fragments that the expert examined, he determined that it could have been fired from a .38 or a 9mm. And then the gun that the defendant claimed he had was a 9mm, and he threw that in the Mississippi River. So the murder weapon was never found. So it never just proved anything. What he said was that I believe the rifling was different in that Ruger that was presented as an exhibit, because the rifling on the fragments that he examined were left instead of right. No, isn't a rifling kind of like a fingerprint? Every gun has a different rifling. Right. But it's just demonstrative. It didn't matter that it wasn't the gun that shot him, because nobody was trying to say it was the gun that shot him. Yeah, nobody was trying to say that that gun fired the bullet. It's kind of just confusing. Right. Yes. Yeah. You know, the first time that accountability came up specifically was in closing argument, but that was before the defense counsel had a chance to respond and did not respond to the state's alternative accountability theory. After trial, in the post-trial motion for a verdict for judgment notwithstanding the verdict or in the alternative of a new trial, counsel didn't complain of any surprise. Counsel just said, no, the evidence was not sufficient to prove him guilty beyond a reasonable doubt on a theory of accountability. So there was never any complaint of surprise by defense counsel below. Don't you think that if the trial had started on the basis of both theories, that defense counsel may have pursued a different trial strategy? You know, I don't think that that's necessarily true. There was a witness to this murder. There was the mother of the murder victim heard the shot, heard the door open and heard the shots, but there's no actual. I mean, she heard the shot, but there's no witness. The only evidence that ties the defendant personally to this crime is his own statement, and his, you know, I don't know. You don't think there might not have been explanation or attempt to have some sort of evidence as to any planning, any intent, any agreement of action or anything? You don't think this would have any effect at all on a defense attorney's trial strategy, knowing that he or she would be faced with both the act and accountability? Well, there is some indication that defense counsel must have known about the possibility of him being found guilty on a theory of an accountability, because when you look at opening statement, this is what she said. During opening statement, she discussed that recorded statement of the defendant, and she urged that this recorded statement would only show his presence and that he had a 9mm gun, a Ruger. I'm sorry, what on the Ruger? I missed that. I'm sorry. Could you repeat that, please? During opening statement, defense counsel discusses the defendant's recorded statement, and she says that she urges that this recorded statement will only show his presence and the fact that he had a 9mm Ruger. And so she's tacitly recognizing that the state would have to show something more than mere presence, and that is the theory of accountability. You have to show that the defendant aided or attempted to aid another in the commission of the crime. You have to show that they participated in the crime, either before or during the crime, and that they had the specific intent to facilitate the crime. And in this case, the defendant said why they went over there was that he had heard that the victim had used an expletive with his brother. And so in other words, he was going there to aid his brother because this victim had wronged his brother. So that's evidence of his intent. The whole evidence of guilt by accountability derives entirely from the defendant's statement itself. There's nothing else. And we know he was armed. Yeah, he was armed. He admitted he was armed, and he'd gone there with his brother because this victim had wronged his brother in some way. And so they were both armed, and they went there to confront the victim. So this is enough to show, and it's undisputed that the victim was killed during that visit. So counsel understood because she's arguing mere presence, and that is something that she's trying to do to avoid guilt by a theory of accountability. So I think it was obvious to counsel that this was a possibility because she's arguing, no, the statement just shows only that he was present and that he had a Ruger. When the victim was killed. So I think that a close reading of counsel's opening statement shows that she was aware of the possibility. Now, notice itself is primarily given by the charging instrument. And as this court well knows, accountability does not have to be charged. It is not a separate count. According to this AI, it is an alternative theory, but it doesn't have to be charged. And if there is evidence that shows guilt by accountability, then the state is permitted to ask for jury instructions. And ordinarily, as this court knows, that's when, if there had been any doubt before, that defense counsel would also know what theories the jury is going to be instructed on. But in this case, it's a bench trial, which should make no difference. Because in this case, the only evidence that, I mean, there's no surprise about what evidence is going to be presented. There's no discovery evaluation. There's no new evidence. And they don't complain that counsel was ineffective for not anticipating this. And apparently she did because of what is contained in her opening statement. But she had notice by the charging instrument itself, which charges first-degree murder. And there's only one crime of first-degree murder. And there are various ways it can be committed, but there's only one crime. And that's the crime the defendant was convicted of. So we don't have, I mean, we do have notice by way of the charging instrument. Are we even to consider his surprise or lack of surprise if there's adequate notice in the charging instrument of accountability? I mean, if it's assumed as part of a murder charge? I don't see that this court should presume prejudice because it's not charged under a theory of accountability. Or not telegraphed sometime earlier is what I'm basically getting at. Since 1846, for 162 years, this court, I mean, the state of Illinois has found guilt by accountability. It has recognized aiding and abetting. And that's, it's almost implicit in any charge because, and even though it just charges the defendant as principal, it is established law that they can be found guilty under the theory of accountability. So it's not, it should not have been a surprise, especially given the nature of the evidence that was going to present it, which is the defendant's statement, which is the only thing that actually ties the defendant to this murder. And in the parameters of the statement is what the judge used to find accountability. And competent counsel, which, and this defendant doesn't claim that counsel Blow was incompetent, would have seen that within the parameters of the defendant's statement itself. So the evidence that was going to be presented that she was prepared to defend against also gave evidence. So thank you for that support. Thank you very much. Thank you. Counsel contends that there should have been no surprise because of the prosecutor's opening statement, passing reference to the fact that the prosecutor mentioned that the evidence will only show that Mr. Harris was present. The fuller reading of the opening statement shows why it was a complete surprise and reasonable for counsel not to realize that the defendant's statement is proceeding under accountability. That statement, opening statement by the prosecutor was, the evidence will show that Mr. Harris committed the offense of first degree murder, and that Mr. Harris went to the decedent's home with Doug Griggs and J.R. Jameson, and Mr. Harris shot the decedent. Then later in the opening statement, the prosecutor again mentions, the defendant shot Marian Williams in the back of the head twice at the opening statement. Now to think that the defense would not be surprised about the accountability theory when the state outlined its theory of the case twice in the opening statement, and Mr. Harris shot the decedent in the head twice. This is a Sixth Amendment right to notice case, and it would, I think, be a travesty or very unfair if the defendant is held to proper notice by a mere passing reference in an opening statement that the prosecutor said that Mr. Harris was present, and therefore he should realize that he was subject to a possible conviction under accountability theory, when the prosecutor also stated twice in the opening statement that the evidence will prove that Mr. Harris shot the decedent in the back of the head. And yet the attorney didn't object in the closing. Your Honor, I think that, you know, we're gracefully preserving the issue, but the point is, Your Honor, I think that actually helps in a way, it shows that defense counsel was caught by surprise. I mean that, again, the prosecutor argued in the closing argument, he was arguing that Harris was the shooter. But he didn't bring it up in any post-trial motion either. That's correct. That's correct. Again, a plain error not to preserve the issue, but to have the issue considered by this court. But I think that the fact that defense counsel did not address accountability in the closing argument shows that he didn't realize that it was a theory. Maybe he wasn't surprised. He was surprised. But that's your surprise, but he may not have been surprised. Well, it would have been reasonable for him to be because of the opening statement. And then, again, this reference to accountability was impassive in the prosecutor's closing argument. I understand that, but he doesn't object. He doesn't say anything in the post-trial motion. And here we are with you representing him quite ably. And you're surprised, but I don't know that the defense lawyer was surprised. Well, all I can say, Your Honor, is that he was surprised at the time of the closing argument because he didn't address it. He didn't address it. I mean, that's not how proper notice is supposed to happen. There's supposed to be notice of the charge, defend against it, present the closing argument, addressing the evidence of the charge. But there is notice of the charge because it's subsumed in murder. Well, that's true. That is true. I've read Sayhoff several times now, and I don't see how you get around that. Because there was notice during the course of the trial, and the defense counsel knew before he presented his closing argument that his client may be subject to an accountability conviction. And here we did not have that. We did not have that. Again, this is not a question about the charge. This is about notice. And in some circumstances, accountability is brought up in jury trials, in voir dire, opening statement, that everybody knows. An opening statement is mentioned again. Jury instruction conference, it's mentioned again. Here, this is a bench trial. Nothing. A passing reference and closing argument by the prosecutor.